UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KEVIN S., JR. | ) | |
| | ) | |
| Plaintiff, | ) | No. 21 cv 0470 |
| | ) | |
| v. | ) | Magistrate Judge Susan E. Cox |
| | ) | |
| KILILO KIJAKAZI, Acting Commissioner of the Social Security Administration, | ) ) ) | |
| Defendant. | ) ) | |

**ORDER**

Plaintiff Kevin S., Jr.[1] appeals the decision of the Commissioner of the Social Security Administration ("Commissioner") denying him disability insurance benefits and supplemental security income under Title II and Title XVI of the Social Security Act. The Parties have filed cross-motions for summary judgment. Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security [dkt. 14], construed as a motion for summary judgment, is granted. The Commissioner's Motion for Summary Judgment [dkt. 19] is denied. For the reasons discussed below, the Court remands this matter for further proceedings consistent with this Order.

**I. Background**

This is the second time Plaintiff's denial of Social Security benefits comes before the Court. Initially, Plaintiff filed applications for disability insurance benefits and supplemental security income, alleging an onset date of disability beginning May 2, 2013. [R 16.] Briefly, Plaintiff alleges disability due to ankylosing spondylitis, "an inflammatory disease that, over time, can cause some of the bones in the spine (vertebrae) to fuse. This fusing makes the spine less flexible and can result in a hunched posture." Mayo Clinic, Ankylosing Spondylitis, https://www.mayoclinic.org/diseases-conditions/ankylosing-

---

[1] In accordance with Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff only by his first name and the first initial of his last name(s).

spondylitis/symptoms-causes/syc-20354808 (last accessed August 2, 2022). [R 286.] Plaintiff's claims were denied by an Administrative Law Judge ("ALJ"). [R 16-26.] After review, on May 21, 2018, Judge Cox remanded the claim back to the Administration. [R. 512-19 (Northern District of Illinois Case No. 16-cv-11594).] On remand, a different ALJ held a new Administrative Hearing and again issued an unfavorable decision dated May 29, 2019. [R. 448, 450-57, 480-511.] Plaintiff filed the instant action on January 27, 2021, requesting review of the Commissioner's decision. [dkt 1.]

**II.    The ALJ's Decision**

On May 29, 2019, the ALJ issued a written decision denying Plaintiff disability benefits. [R 448, 450-57.] At step one, the ALJ determined that Plaintiff did not engage in substantial gainful activity since the alleged onset date of May 2, 2013. [R 452.] At step two, the ALJ found that Plaintiff had the severe impairments of ankylosing spondylitis. [*Id.*] The ALJ found Plaintiff's hypertension, bilateral knee osteoarthritis, leg length discrepancy, and chronic foot pain to be nonsevere impairments. [*Id.*] At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments of 20 C.F.R. Part 404, Subpart P, App'x 1. [*Id.*] The ALJ made this step three determination after considering the listing requirements for Listing 1.04 (Disorders of the Spine). [*Id.*], As part of his step three determination, the ALJ noted, in part, that during the consultative examination, Plaintiff refused to bend forward to check for back range of motion in the upper and lower extremities. [*Id.*]

Before step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC")[2] to perform light work, with the exceptions that he can lift only 10 pounds occasionally and less than 10 pounds frequently; he cannot not sit for more than 15 minutes at a time and stand for more than one hour at a time, so must alternate throughout the workday as needed; he cannot not climb ladders, ropes, or scaffolds, or kneel or crawl, and cannot not work around hazards such as unprotected heights

---

[2] RFC is defined as the most one can do despite one's impairments. 20 C.F.R. §§ 404.1545, 416.945.

and exposed moving mechanical parts. [*Id.*] At step four, the ALJ found that Plaintiff was unable to perform his past relevant work, which was all performed at a heavy exertional level. [R 456.] Finally, at step five, the ALJ found there were jobs that existed in significant numbers in the national economy Plaintiff could perform. [R 456-57.] Despite finding Plaintiff limited to light exertional jobs, the ALJ relied upon testimony from a vocational expert ("VE") in concluding that Plaintiff could perform the sedentary jobs of Polisher (DOT 713.684-038), about 12,000 jobs nationally; Sorter (DOT 521.687-086), about 10,000 jobs nationally; and Inspector (DOT 726.684-050, about 8,000 jobs nationally. [*Id.*] The ALJ specifically noted that these jobs can be performed while standing. [R. 457.] Because of these determinations, the ALJ found Plaintiff not disabled under the Act. [*Id.*]

III. **Social Security Regulations and Standard of Review**

The Social Security Act requires all applicants to prove they are disabled as of their date last insured to be eligible for disability insurance benefits. ALJs are required to follow a sequential five-step test to assess whether a claimant is legally disabled. The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; and (3) whether the severe impairment meets or equals one considered conclusively disabling such that the claimant is impeded from performing basic work-related activities. 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920(a)(4)(i)-(v). If the impairment(s) does meet or equal this standard, the inquiry is over and the claimant is disabled. 20 C.F.R. § 416.920(a)(4). If not, the evaluation continues and the ALJ must determine (4) whether the claimant is capable of performing his past relevant work. *Cannon v. Harris*, 651 F.2d 513, 517 (7th Cir. 1981). If not, the ALJ must (5) consider the claimant's age, education, and prior work experience and evaluate whether she is able to engage in another type of work existing in a significant number of jobs in the national economy. *Id.* At the fourth and fifth steps of the inquiry, the ALJ is required to evaluate the claimant's RFC in calculating which work-related activities she is capable of performing given his limitations. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). In the final

step, the burden shifts to the Commissioner to show that there are jobs that the claimant is able to perform, in which case a finding of not disabled is due. *Smith v. Schweiker*, 735 F.2d 267, 270 (7th Cir. 1984).

In disability insurance benefits cases, a court's scope of review is limited to deciding whether the final decision of the Commissioner of Social Security is based upon substantial evidence and the proper legal criteria. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004). Substantial evidence exists when a "reasonable mind might accept [the evidence] as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). While reviewing a commissioner's decision, the Court may not "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Young v. Barnhart*, 362 F.3d at 1001. Although the Court reviews the ALJ's decision deferentially, the ALJ must nevertheless "build an accurate and logical bridge" between the evidence and his conclusion. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (internal citation omitted). The Court cannot let the Commissioner's decision stand if the decision lacks sufficient evidentiary support, an adequate discussion of the issues, or is undermined by legal error. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535,539 (7th Cir. 2003); *see also*, 42 U.S.C.§ 405(g).

**IV. Discussion**

On appeal, Plaintiff argues, *inter alia*, that the ALJ's step five determinations is erroneous because is conflicts with the RFC. Specifically, Plaintiff complains that these jobs would require Plaintiff to stoop for longer than allowed by the RFC.

In the RFC assessed by the ALJ in this case, the ALJ found Plaintiff could stand for no more than an hour at one time, sit for no more than 15 minutes at a time, and could stoop only occasionally (*i.e.*, up to one-third of the day [R. 452; SSR 83-10.] As to the jobs that Plaintiff could perform (Polisher, Sorter, and Inspector), the VE testified that some of these jobs were performed at table height, and

4

some were at bench height, which is higher than table height. [R. 505.] The VE further testified that if a person were standing while performing these jobs at table height, they would have to bend over "slightly" to reach their work. [*Id.*]

Plaintiff contends he would be unable to perform any of the jobs performed at table height if he were required to stand for more than one-third of the day, because this would require him to stoop to reach his work more than occasionally. Here, however, there is some disagreement amongst the parties on the definition of "stoop." Plaintiff cites to a Social Security Ruling ("SSR") where stooping means "to bend the spine alone," and the Commissioner cites to a different SSR where "[s]tooping is a type of bending in which a person bends his or her body downward and forward by bending the spine at the waist." (*Compare* SSR 85-15 *with* SSR 83-10.) But the quibble here is quite literally in degrees: the Commissioner contends that it is unclear from the record whether the need to bend over "slightly" would qualify as stooping. [Dkt. 20, p. 22.] However, the VE was not asked to clarify whether slightly bending was distinct from stooping, nor was the VE asked to explain whether the pool of available jobs was reduced based on the degree of stooping required within each occupation. Without further elucidation or qualification, the Court must conclude that stooping means bending over, regardless of the degree of bend in the spine. The relevant SSRs define stooping as bending and the VE noted that the proffered jobs required slight bending [R. 505]; thus, these jobs require stooping. The Court agrees with Plaintiff on this front that "[a]ny issue the Commissioner takes with the lack of specificity in the residual functional capacity assessment is the fault of the ALJ, not Plaintiff." [Dkt. 21, p. 3.]

Plaintiff is six feet tall and would have to bend his spine while standing to reach his work at table height. [*See, e.g.*, R. 31, 299, 507-08.] (In fact, the VE seems to intimate any person would have to bend over in order to work at a table-height job. [R. 505.]) Yet Plaintiff's medical records specifically document an inability to bend. [R. 389 ("cannot bend at all"), 1070 ("his back pain is still the same (disabling, unable to bend)").] Given the ALJ's finding that Plaintiff would spend more of the day

5

standing than sitting (*i.e.*, he could sit for no more than 15 minutes at a time [R. 452]), any of the time spent standing (which must be more than half the day) would require him to stoop. Since Plaintiff can stoop for no more than one-third of a workday, any jobs performed stooped to table height exceed his residual functional capacity in that he would be stooping more than occasionally/one-third of the day. Plaintiff explains this conclusion, with which the Court agrees, as follows:

> [the RFC] provides Plaintiff must change position from sitting to standing, with the ability to stand for one hour at a time, and to sit for 15 minutes at a time. [R. 452.] Based on [this RFC] assessment, Plaintiff's standing tolerance is four times greater than his sitting tolerance, so he must be expected to stand at least as much as sit, and likely far more. Even if standing and sitting were split evenly, four hours each per day, the amount of standing (and thus stooping to reach his work) would exceed one-third of the day.

[Dkt. 21, p. 3.]

When asked how many jobs were performed at table height, and how many were bench height, the VE testified "I honestly don't know – there's no statistics on that." [R. 509.] Undoubtedly *some* jobs would be eliminated from the available job base due to Plaintiff's restriction on stooping within the RFC, but the Court is left with a void here instead of an understanding of how the job base would be eroded.[3] The total number of jobs is necessarily reduced, but to what lower, unspecified number the Court is unsure.

Ultimately, the Court cannot reconcile the ALJ's step five determination with the RFC of record. The ALJ failed to build a logical bridge between the RFC and the jobs cited by the ALJ as ones Plaintiff could perform, given the RFC's total prohibition on stooping when performing work. *Steele v. Barnhart*, 290 F.3d at 941 (ALJ must "build an accurate and logical bridge" between the evidence and his conclusion). The Court must remand this matter for this reason.

---

[3] The total job availability numbers in this case are debatably low already without that erosion (*i.e.*, 30,000 jobs nationally). *See, e.g.*, *Brace v. Saul*, 970 F.3d 818, 822-23 (7th Cir. 2020) (reversing where VE was unable to provide a basis for the estimated number of jobs). The Court makes no findings here as to what constitutes a significant number of jobs in the national economy, other than noting that Plaintiff argues 30,000 is too few, while the Commissioner maintains that number is adequate.

## V. Conclusion

Based on the foregoing, the Court must reverse and remand for proceedings consistent with this opinion. At this time, the Court offers no opinion as to the other alleged bases of error in the ALJ's decision as raised by Plaintiff. Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security [dkt. 14], construed as a motion for summary judgment, is granted. The Commissioner's Motion for Summary Judgment [dkt. 19] is denied.

Entered: 8/5/2022

_____

U.S. Magistrate Judge, Susan E. Cox